In our last argument of the day, Chizmar v. ACCO Brands Corporation Appeal No. 15-1715. This case involves two patents, and unless the court has a preference, I'm going to begin with the 140 patent in which the district court found that the elastic pivot, which is recited in Claim 20 of the 140 patent, was not adequately described in the parent application. Now, to begin with, what's important is that there was no separate Markman hearing in this case, but the court appears to have construed the phrase elastic pivot to require two things. On the one hand, a hinge that is elastic, and on the other hand, a fulcrum that exhibits cantilever bending. The first important point to note is that the structure of the elastic pivot, namely the hinge and the fulcrum, were not challenged by the district court as not appearing in Figure 25 of the 640 patent. Instead, what the district court found was that the inherent properties of that structure, namely the fact that the hinge is elastic and the fact that the fulcrum exhibits cantilever bending, was not precisely described with those words in the earlier parent application. So is it your view that the continuation in part application, that ultimately actually expressly described an elastic joint, and the word elastic joint, of course, didn't exist in the original application, that the CIP application actually didn't provide any new content? Correct. Our view is that what was disclosed in the earlier parent application was the hinge and So theoretically, the CIP could have been just a continuation application? Well, with respect to Claim 20, it could have been a continuation application. That's the only asserted claim in this case so far. And the only challenged element, and the element on which the district court found no written description existed, is the elastic pivot. And with respect to the elastic pivot, to your question, that actual feature could have been part of a continuation application. I guess, why did you add all that new written description and all those new figures? They were added to... Well, the fact that inherent properties of what was disclosed in the earlier application was added to elucidate more features of the invention, in and of itself, is not a sufficient basis to deprive an asserted patent from claiming priority to an earlier patent. And we cited case law in our briefs to that effect, namely Allergen v. Sandoz and Kennecut v. Kyocera. So what's important here, and what I want to emphasize, is what did the district court find was missing? Not the hinge, not the fulcrum. Rather, what was missing was the fact that the hinge was not elastic, and the fulcrum did not exhibit cantilever bending. Going to elasticity, the patent describes that the hinge is located in the back cover, and the patent expressly describes that the back cover can be made of cardboard, plastic, or semi-rigid material. The district court acknowledged that semi-rigid material is elastic. And so therefore, you have on the record, the district court is saying that the very material that the hinge is made out of is elastic. The district court construed the phrase elastic as being capable of deformation without permanent loss of size or shape. That was a definition provided by the district court. The hinge, to the extent that it bends repeatedly over the life cycle of a binder, is itself capable of deformation without permanent loss of size or shape. The issue here is whether or not this case was warranted to be dismissed on summary judgment. The issue is whether an issue of fact exists that a hinge that is supposed to bend back and forth over the life cycle of a binder, that is described as being made of cardboard, plastic, or semi-rigid material, is capable of sustaining deformation without permanent loss of size or shape. And so to your question, could that elastic feature have been part of a continuation application? It could have. Now with respect to the cantilever bending, again, it's another inherent property of the structure that was actually disclosed. We identified in figure 25 of the parent application element 1740C. We provided a figure comparing figure 25 of the earlier patent with figure 19 of the later patent. And they both illustrated a fulcrum.  Instead, it found that that fulcrum was not expressly described as exhibiting cantilever bending. But what did the earlier patent describe? It described that that feature, which we identified as a fulcrum, is made of plastic, which is the same material that the elastic pivot is made out of in the later patent. And it also described that that feature that we identified as a fulcrum is an area of reduced thickness. And elsewhere in the patent, in the earlier patent, areas of reduced thickness are expressly described as being flexible. Taken together, there was sufficient evidence, and I think we satisfied our burden of production, that this feature was flexible. And to the extent it was flexible, it could bend like a diving board. And to the extent it could bend like a diving board, there was an issue of fact that that fulcrum exhibits cantilever bending. And so therefore, should this case have been dismissed on summary judgment without allowing a jury to decide these questions, our position is no. So I guess the idea is, even though when you read the original spec, no one would really think, after reading it, about cantilevered bending. It was still somehow necessarily an inherent part of the disclosure, and so therefore, it's fair to say the inventor had possession of an elastic joint? An elastic pivot, yes. An elastic pivot? First of all, I don't think our position is that people would have thought of it. The answer is that no one would have thought that this piece of plastic that looks like a fulcrum, that is described elsewhere in the patent as being flexible, would not have cantilever bending. But even so, we want to underscore that the idea of cantilever bending is an inherent property of the structure that was actually disclosed. Why doesn't the claim just say elastic pivot, and instead it says hinge joint or elastic pivot? Or I think it says elastic pivot or hinge joint, something like that. Before the district court, we took the position that those two structures were the same. The district court disagreed, and we're not challenging that on this appeal. So how did the district court construe the phrase elastic pivot? Again, there was no separate Markman hearing in this case, but the district court appears to have said that the elastic pivot is something different than the hinge joint, namely it has an elastic hinge and a fulcrum that exhibits cantilever bending. So whether or not the elastic pivot and the hinge joint are the same is really not an issue in this appeal right now. What's on issue in this appeal, at least with respect to the 140 patent, is whether or not what the district court said the elastic pivot was, could have been described, was described in the earlier patent, putting aside those inherent properties that are not required to be expressly spelled out. Do you want to move to the other patent? Sure. I'll move to the claim construction issue on the 640 patent. So as you recall, this issue dealt with whether or not the column-like thick portions were required to be on opposite sides of the ring. The district court held that the claim recites column-like thick portions in the plural, but those two portions must be on opposite sides of the ring. To begin with, the district court acknowledged in its opinion that its construction was a departure from the plain meaning of the claim term. It expressly held that column-like thick portions are not defined expressly in the patent as being on opposite sides of the ring or being separated by the upper thin bow-like portion. And therefore, to the extent it construed the claim as a departure from its plain meaning, we're in the realm of having to identify either lexicography or disclaimer to justify that construction. Well, I have to admit, you know, I read your claim first and, you know, the claim is painting a picture of this oblong ring and it's got a upper horizontal portion and then a lower horizontal portion and then it has vertical column-like thick portions. And I'll just be honest, a vision came to my mind as to what this claim was calling for. And then once I understood what the theory of infringement was, my mind got scrambled because now the vertical portions are actually not on either side of the ring, the claimed ring, we're stacking the vertical portions on top of each other on one side. Correct. And so I did not expect that. And then when I go back and hunt through the spec, I don't see anything even remotely suggesting that. Well, I think there is embodiments remotely suggesting that. We identified figure 59 and I think it's important to also go back to what's the purpose. Figure 59 is located on page 52 of our brief as well as A0126. And what's important to note about figure 59 is that the right side of that figure is much bigger than the left side. And so to the extent that your mind went to this idea of two column-like portions on each side of the ring, the claim does not actually require two equally sized portions. And there's a reason for that. And that reason is what justifies it. Figure 59, you say the two column-like portions are where? On the right side and they're sort of stacked on top of each other? Figure 59 is described as having plural column-like portions. And that is because one of the column-like portions is inserted into the other? Well, our position is that the one on the left side is not a column-like portion. Well, I understand, but I'm trying to see what your theory is as to where the two column-like portions are in figure 59. They would be stacked on top of one another. And one is the part that is going into the other, right? The thin one going into the thick one? No, the thick portions are the column-like thick portions on the right side. Well, you're not helping me by saying, when I ask you what are the two column-like thick portions, you say they are the two column-like thick portions. Show me in the figure where the two column-like thick... Allow me to finish my question, please. Show me in the figure where the two column-like thick portions are in figure, let's just take figure 59B. Our position is that, to the extent that there's two column-like thick portions in that figure, they're stacked on top of each other inside of the... 59B? Figure B is the one that... I can see your argument in 59A, but I don't see it in 59B. The figure 59A and B are the same ring. They're not the same drawing. Well, they're the same ring. One is in the compressed state and one is in the expanded state. Right, which is why I was asking, is your argument about the two thick column-like thick portions, that identifies the two parts that get joined together in figure 59B, but you said no, which surprised me. Well, because they don't necessarily have to... They can be, the two parts that are joined together, but the specification is not explicit on this point. Here's where I'm having trouble with it. I think we may be passing on another in the night here with the questions unanswered. I don't understand why, and if you're not saying that the two column-like portions in figure 59A are the portion that gets inserted, A, and the portion into which something is inserted, B, if those aren't necessarily the two column-like figures, then why isn't it features on the right side of figure 59A, or 20? I mean, you're just saying, you've just divided them into a number of different column-like features and count each of them. You're saying there are two of them there, and I can't see duality. We're not necessarily saying there's two of them. We are agreeing that in one embodiment, one could be on top and one could be on the bottom. We're also suggesting that the patent is not specific, at least in this figure, as enumerating precisely where the column-like thick portions are, and there's a reason for that. There's a reason for why the column-like portions can be on one side of the ring, and we're not necessarily saying that this figure 59 is a precise example of this claim. If I were to look at figure 59, how many column-like features would I be seeing? More than one. How many? The patent says that there's plural. How many? It's not our position that we have to specify exactly where they are in order for the construction of this claim to be justifiable. So how would I know whether I'm looking at one or two or three? I think that a fair reading is that there's not more than three, and a fair reading is that there's two, and the two column-like portions are on the right side of the ring. The reason they're on the right side of the ring is because that's the part of the ring that has to resist permanent buckling, which is a theory of the claim. The purpose of the claim is that when the ring gets compressed, it won't get smushed. You would agree that if I imagine for myself that there are two vertical column-like portions on the right-hand side, one of them is really skinny compared to the other one, right? That's why our position is that the skinny one doesn't necessarily have to be a column-like thick portion, and that does not necessarily lead to the conclusion that there's infinite column-like thick portions in that one column underneath. But it does lead to the conclusion, in your view, that there's more than one. There can be, yes. So maybe it's the... Simply by virtue of your declaring that it is more than one. Because of what this patentee said in the specification. He described this embodiment as having multiple column-like portions. He did not enumerate like he did in other embodiments precisely where the column-like thick portions were, and therefore, to the extent that it's... Did he say multiple column-like that were thick? He said multiple column-like that were thick, correct. And the left side... Where did he say that is? That's on page... It's on column 56 of the 6-4-0 patent, which is A0156 towards the bottom, near Alliance. Which column was it? I think it must be column 59, right? I'm sorry, 59, at A0156. At the very last two lines, 66, 67. 66? When upright and closed, ring 2046 has roughly vertical column-like portions that are relatively thicker than its roughly horizontal bow-like portions, right? So that's when the ring is closed. So we should be looking at 59B? No, no, that's when the ring is open or closed. I'm into my rebuttal time, but... Okay. But it's not relatively thicker than the horizontal portions, 59A. Our position is that this embodiment doesn't set the confines of the claim. Without lexicography or disavow, there's a reason why the column-like thick portions can be on one side of the ring, to support the ring when it's compressed, so that that But for clarification, if I could, just to make sure I understand, you're saying that the portion that's on the left side of 59A, that's marked 220, that's not a column? We're saying it's not column-like. The claim requires a column-like. That was my question. And are you also saying that on the right-hand side, what I'll call the skinny vertical portion that is labeled 2046N, you're not saying that's thick? Are you? We're not taking the position that's thick, no. Okay, so then it would be the lower right-hand vertical portion that is actually perhaps more than one column-like thick vertical portion, is that right? Correct, in conjunction with what Judge Bryson just said. It's showing one. But his argument is there's more than one there. Sure. Okay. We'll give you two minutes for rebuttal. Let's hear from the other side. Chad Stover for Appellees, may it please the Court. I think some of the issues that your honors are struggling with are ones that we struggled with as well. I'd just like to point out, before I get into the merits, that there seem to be some attacks on the process used by the District Court here, and I'd just like to note that a process is not being appealed here, and that's not something that's been appealed. It also did not appeal the construction of the term elastic pivot to the extent the District Court construed it. I'll start with the invalidity issue on 140, Patent Claim 20, and we believe that the District Court should be affirmed. Going back to the beginning, we identified prior art, actually our own product, that would invalidate the claim unless they can rely on this earlier application that matured into the 640 patent. The written description argument that they make focuses on elastic pivot. We also have another argument that other claim elements in that claim are not present in the prior application as well, including elastic binder rings. For purposes here, I'll stick with elastic pivot. That term, as Judge Shen, you noted, appears for the first time in the CIP, the continuation in part application that led to the 140 patent. If you look at the earlier application, it's not there. In the later application, it appears, figures 19 and descriptions of figure 19A and 19B appear for the first time in the CIP, and that's where an elastic pivot is for the first time described. The term in the patent, in the 140 patent, as you noted, is elastic pivot or hinge joint. It's stated in the disjunctive, showing that there's a difference between an elastic pivot and a hinge joint. If you look at the specification, it describes them differently as well. They're trying to rely on this hinge joint 76 in the earlier patent as written description support for an elastic pivot, but there's just no evidence. There's no evidence from a person of ordinary skill in the art. There's no evidence from any expert. They just didn't submit any evidence, so that grounds enough to affirm the district court's judgment. Do you agree that they disclosed an embodiment of a cover that is inherently flexible? No, I do not agree with that. In discussing a separate embodiment, it was discussed that the cover could be made out of a wide variety of materials. Could be cardboard, could be plastic, could be an elastic, sorry, semi-rigid material. And then they extrapolate from that, and they take on a burden of the doctrine of inherency, which we never saw before the district court. But a couple of those inherently are capable of being deformed, at least to a certain degree, right? That a hinge joint might be deformed doesn't get you where they need to go. What they need is they need to show an elastic pivot. An elastic pivot has an elastic hinge, a fulcrum, and cantilever bending of that fulcrum. So they need to show all three. At best, they've shown an elastic hinge. There's no way that they've shown a fulcrum, and there's no way that they've shown cantilever bending of a fulcrum. The figure that they focus in on that shows the hinge joint 76, they point to a part of that figure, 1740C, which the patent describes as a back cover portion. You'll notice in their briefing, they always refer to it as a fulcrum, but it's never referred to as a fulcrum in the patent itself. And that, so that there's a structural difference between what's disclosed in the earlier patent and what's disclosed in the later 140 patent. And also, they take on this doctrine of inherency, and the doctrine of inherency says that something must necessarily be so. It's not sufficient that it might be so, or that sometimes it might be so. So we have a disclosure that the back cover could be cardboard, could be plastic. Plastic is not necessarily elastic. For instance, I mean, my pen is plastic, it's very hard, rigid. No one would argue that that's elastic. It's not necessarily elastic, and cardboard, for instance, is not elastic, and that's another material that the back cover could be made out of. So if you look at the figure, 25A and 25B, it shows a ring, first in an upright position, and then in a rotated position. And if you look at 1740C, it doesn't move, it doesn't flex, it doesn't bend, even when the ring rotates. So the 640 patent explicitly shows no bending. And I'd just like to note also that the Lockwood decision, we believe, is right on point for this, and it says that entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed. And that's a case that we cited at the district court level. The district court relied on that. Now to try to pivot, bad pun, around that decision, the other side is trying to argue this doctrine of inherency. But really, the inherency argument they're making is just another way of saying it was obvious and it wasn't, there's no testimony in the record that it was. I'll move on to the literal infringement of Claim 17 of the 640 patent. The roughly vertical column-like thick portions in the patent must be on opposing sides. They're arguing lexicography or disavowal must be shown, but what the district court properly did was to look at the claim and evaluate that claim, construe it in light of the intrinsic evidence, and how a person of ordinary skill in the art would have construed the claim in light of specification. And if you look at, for instance, the claim itself and the claim function, the claim itself talks about column-like thick portions on the sides, it talks about a bow-like upper portion and an extendable lower portion, and it talks about a specific function, that the upper portion and the lower portion widen and flatten outward, and the columns don't widen and flatten. And so if you have that claim functionality, the only way that claim functionality can work is if you have columns... Column remains, but the tops of above squish down, right? That's right. So the compressibility, the compression is happening in the top portion and the lower portion of the columns. But it says you can do that with the columns on the same side. You couldn't do that. There's no disclosure of how the claimed function would work with the columns on the same side. Well, but if you look at figures 59A and 59B, why isn't that a disclosure, setting aside whether there are two columns on the right side or one, why isn't that at least a disclosure of a situation in which the function is performed, even though you only have a column or columns on one side? If you start with the assumption that 220 is not a column. If you start with the assumption that 220 is not a column, then I don't understand how there could be more than one column on the other side. Well, that's a separate question. They argue whether two columns there, but let's assume that problem away for a moment. You certainly could have the resistance to compression with only the one column on the right side, right? I mean, that's what appears to be happening in figure 59A and figure 59B, right? There appears to be compression in the lower and upper portions of the range. And the thick section on the right is keeping that compression from collapsing the ring altogether. I would argue that the thick section on the right and on the left is keeping the ring from collapsing. But that's the basis for your argument that what's at 220, even though it isn't long, is thick enough to constitute a column, right? That's correct. And I believe they admitted that in their reply brief. If you look on page 23 of their reply brief, they say, I'm sorry, not their reply brief, in their opening brief. The bottom of page 23, they say, despite having only a small sliver of a portion actually column-like on the left side, figures 59A, 59B nonetheless satisfy the functional requirements. So they're admitting that there's at least a sliver of a column-like thick portion on the left side. And I'll admit in other parts of their brief, they seem to take a contradictory point of view on that. But at least for the doctrine of equivalence, they seem to be admitting that there is a column-like thick portion on the left side and on the right side. And the other issue I wanted to address is something that you touched on earlier, Judge Bryson. And that is the sort of absurd result that would happen if you took their claim construction. And that is, there would be no way to tell how many portions were in a ring, where they are, or where a portion might start or end. So it would leave the claim invalid as indefinite, and I would argue also invalid for lack of any written description, because there's no written description in the patent of how a ring, I'm sorry, with columns both on the same side would work. And then we have an alternative reason to affirm the district court's judgment as well. We have the claim construction, but even if you don't go with us on claim construction, we have the argument that the accused rings do not have any more than one vertical column-like thick portion. And no reasonable juror could find that they would. They point to, in their brief, an area above the snap closure and an area below. But if you look, for instance, claim, or sorry, figure 55 of the patent, it shows, for example, whenever there's a ring-closing mechanism, in fact every figure that has a ring-closing mechanism shows that there's a portion above and a portion below. And when it refers to that, it refers to it as a single column-like thick portion. It doesn't refer to them as two column-like thick portions in the patent. So we would submit that you could sustain the district court's summary judgment of non-infringement. Is there some point in the written description that, where they're discussing 55A, that refers to the left-hand side as just being a single portion? I believe there is, Your Honor. So you'll see column 58 of the 640 patent, column 58, line 58. Line 45 says, when closed and upright, ring 1646 has column-like roughly vertical thick portions 1646P and 1646Q that resist buckling and has bow-like thin upper portions, 1646R. That's 55B we're looking at. Right. And so if you, it's also shown in 56B as well, on the left-hand side of the ring there is what is said to be a single column and there is shown to be a closure in the middle of that column, but it's not, nowhere does it say that there's a column-like thick portion above and a column-like thick portion below the closure mechanism. And then just briefly on the doctrine of equivalence, we believe they have a lack of evidence and that's what the district court found. There was no testimony from a person of ordinary skill in the art that supports their arguments, no testimony from an expert. The only testimony they rely on is the testimony of ACCO's 30B6 witness and they try to contort that testimony to fit into the function that they claim. And they have a couple of problems. First, they're talking about the wrong function. They're talking about there being a bigger column on one side and a smaller column on the other side and the bigger column can absorb more of the compression force than the smaller column on the other side. That's just simply not in the claim. What the claim says is that you have reversible compressibility relative to a moderate compressive force roughly exerted in the direction of the minor diameter. Again, like I said before, that's going to cause that top portion and bottom portion to compress while the sides don't. That's the proper function. That's not the function that they analyzed and therefore their doctrine of equivalence argument doesn't have any support. In terms of the testimony from ACCO's 30B6 witness, it simply was addressing the snapping and closure of the ring, not the claimed vertical moderate compressive force. It's a different force and it's also a different action. It's a different force because the claimed force is a force on the ring, not a force solely on the column. In their reply brief at page 5, they claim this R axis that runs through the center of the accused column. They say the force that Mr. Blissom testified to is a force that goes directly into that column along the R axis. That's not the claimed force because that force wouldn't cause any compression of the top and bottom portions of the ring. It's a different force and then it's a different action. He's talking about shutting the ring, not compressing the ring. If you look at the patent claim and the description, it talks about perhaps the notebook would be put into a crowded bookcase or briefcase and it would be compressed. That's a totally different situation and something that no witness testified about, no expert testified about. Mr. Chismar himself didn't submit any declaration about that either. All right, I think we have your argument, Mr. Stover. Thank you very much. Thank you, Your Honor. We'll hear two minutes from Mr. Silbersher. I'd first like to go back to the 140 patent. Mr. Stover made a point about figure 25, that element 1740C in the 640 patent is not depicted or illustrated as bending. But the one point I want to make about, again, I'm talking about figure 25, element 1740C, which we identified as the fulcrum, Mr. Stover is suggesting that because it's not illustrated as bending, that's dispositive of the fact that it's not flexible and it can't exhibit cantilever bending. What's important about that figure is that the ring is only partially rotated. In fact, it's not nearly as rotated as it can be. If you look at figure 23, which is on the page before, you see that the ring can rotate much more all the way around. And in fact, in figure 25, to go back, all the paper is still on the top. None of the paper has been rotated around. And so what's important to know about Mr. Stover's argument is that simply because element 1740C is not illustrated in this figure as not bending is not dispositive of the fact that it cannot be flexible, particularly given that it is described as being made of cardboard, plastic, or semi-rigid material, particularly because it's described as being an area of reduced thickness, particularly because elsewhere in the patent, areas of reduced thickness like that in figure 25 are described as being flexible. I'd like to address Mr. Stover's points on the doctrine of equivalence really quickly. His suggestion that we do not present testimony of a person of ordinary skill is incorrect. Mr. Boussam, who was their 30B6 witness, has more than five years of experience designing and developing consumer products, including binders. He has a mechanical engineering degree. This is consistent with their own definition of a person of ordinary skill. They never challenged him in the district court or at some recruitment that he's not a person of ordinary skill. And more importantly, he expressly testified that when the ring is compressed, that right rigid portion of defendant's ring, the right side of the ring, does not break or deflect. In other words, he testified that it does not resist permanent buckling under vertical pressure. And one final point. The district court interpreted his testimony as being limited to the snap closure, as Mr. Stover explained. That was precise error. And what the district court said is that nothing in the 640 patent teaches a relationship between reversible compressibility, resisting permanent buckling, and making sure that the ring snaps together properly. That was error. On page A0153 of the appendix, at column 54, lines 54 to 56, the patent expressly teaches a connection between what Mr. Boussam testified to, namely making sure the ring snaps together properly, and the fact that the ring is stiff enough to resist permanent buckling. Okay. Thank you. Case is submitted. All rise. The ad hoc court is adjourned from day to day.